IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham, # 315014,<br>*aka* Angelo Bernard Ham,<br>　　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>Brian P. Stirling;<br>Dr. John B. Tomarchio;<br>Michael McCall;<br>Nurse Stokes;<br>Anthony J. Padula, Warden;<br>John J. Brooks, Assoc. Warden;<br>Robert Peele, General Counsel;<br>Debra Whitney, Mailroom Personnel;<br>Sandra Bracey-Simon, Mailroom<br>Personnel,<br>　　　　　　　　　Defendants. | Civil Action No. 6:13-3178-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

　　　　　The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## BACKGROUND

　　　　　The plaintiff is an inmate at the Lee Correctional Institution, part of the South Carolina Department of Corrections ("SCDC"). In his original complaint, the plaintiff alleges that SCDC maintains a "chronic clinic" for various chronic conditions, but he has been unjustly denied such clinical treatment despite having chronic dyspepsia and knee pain. On December 13, 2013, the plaintiff filed an amended complaint to add five defendants and a new claim of denial of access to the courts, arising from his attempts to file court

documents through SCDC staff. The defendants filed an answer denying the allegations on January 28, 2014.

On March 6, 2014, the plaintiff filed a motion for judgment on the pleadings (doc. 36), contending that the defendants' answer was deficient. On April 3rd, the defendants filed a motion for summary judgment (doc. 46), arguing that the complaint lacks sufficient factual allegations to make out actionable constitutional violations, and that in any event, they are entitled to the affirmative defenses of qualified immunity and Eleventh Amendment immunity. Filed with the memorandum are the affidavits of two SCDC health care employees and the plaintiff's medical records from SCDC (docs. 46-2 and 3).

In their memorandum in support of summary judgment, the defendants indicate that the plaintiff's medical claims relate to defendants Stirling, Tomarchio, McCall, and Stokes, while the denial of access to courts with respect to a petition for writ of certiorari concern defendants Padula, Brooks, Peele, Whitney, and Bracey-Simon (doc. 46-1 at 2). Regarding the medical claims, the defendants argue that SCDC has provided appropriate care, and the plaintiff has failed to show otherwise. They point out that while SCDC does have clinics for some chronic illnesses, it does not for dyspepsia or knee pain. Regardless, the plaintiff has received medical care and is not entitled to treatment in a chronic clinic. With respect to access to the courts, the defendants argue that the plaintiff has failed to show an actual injury.

On April 4, 2014, the undersigned issued a *Roseboro* order (doc. 47) to apprise the plaintiff of summary judgment procedure. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). After receiving two extensions of time, the plaintiff filed his response in opposition to the motion for summary judgment (doc. 68) on June 23, 2014.

In his response, the plaintiff restates his medical allegations and adds that he also has sickle cell anemia and asthma, and that he should not have to pay for sick calls (*id.* at 4). He argues that defendants Stirling, Tomarchio, McCall, and Stokes are liable for

violating his Equal Protection rights by not providing him with clinical treatment when other inmates qualify, while defendants Padula, Peele, Whitney, and Bracey-Simon violated his First Amendment right to access the courts because they refused to mail his petition for writ of certiorari to the Supreme Court (*id*. at 12–15).

Appended to the plaintiff's response are laboratory reports (doc. 68-1); a copy of SCDC Policy HS–18.15 on Health Services (doc. 68-2); copies of documents and grievances relating to the petition for writ of certiorari relating to *Angelo Ham v. Nora Chandler*, Civil Action 6:10-2020-JMC, Fourth Circuit No. 10-7614 (doc. 68-3); and the plaintiff's affidavit (doc. 68-4).

The defendants thereafter filed a reply (doc. 70), arguing in part that the plaintiff's response and affidavit are attempting to raise new claims and should not be considered by this court because they are separate, distinct, and were not raised in the complaint (*id*. at 2).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

*Medical Care*

With respect to medical care, a prisoner in a § 1983 case action "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Estelle*, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." *Id.* at 105; *cf. Whitley v. Albers*, 475 U.S. 312, 320 (1986) (a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

4

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 102. This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987), as quoted in *Fair v. Stirling*, Civil Action No. 6:13-2940-RMG, 2014 WL 6983363, at *6 (D.S.C. Sept. 10, 2014). With regard to the objective component, a medical need is serious if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), which is cited in *Martin v. Byars*, Civil Action No. 6:12-1089-CMC-KFM, 2013 WL 3553072, at *7 (D.S.C. July 11, 2013). "Plaintiffs must also show the subjective component - deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence or medical malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, disagreements

5

between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

In his pleadings, the plaintiff repeatedly contends that his dyspepsia is a chronic condition for which the SCDC should provide a "chronic clinic." Dyspepsia is the scientific name for "upset stomach and indigestion." *United States v. Mercado-Moreno*, No. CR 12-0252 JB, 2012 WL 3150438 (D.N.M. July 18, 2012). One district court has held that simple dyspepsia is not a serious medical condition. *See Brown v. McGowan*, No. 3:13cv545/RV/EMT, 2014 WL 7391918, at *7 (S.D. Fla. Dec. 29, 2014) (granting summary judgment and upholding Florida Department of Corrections policy that enrolled in Gastrointestinal Clinic inmates suffering from "inflammatory bowel disease such as Crohn's Disease or ulcerative colitis, complicated peptic ulcer disease (*e.g.*, Zollinger–Ellison syndrome or refractory dyspepsia), chronic liver disease, and other gastrointestinal disorders requiring treatment or monitoring" but noting that "[t]he Gastrointestinal Clinic is not intended to follow inmates with simply [*sic*] dyspepsia, constipation, food intolerances, or uncomplicated peptic ulcer disease"). Per the medical records before the court, the plaintiff has received frequent and consistent treatment for his complaints of dyspepsia, and he has failed to show that his condition is serious. The SCDC is not required to provide a chronic clinic for every non-serious, chronic medical condition. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (deliberate indifference standard "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm"). Further, as summarized in the affidavit of SCDC Health Care Authority Gwendolyn T. Stokes, the plaintiff's medical records show that his reported painful knee was x-rayed, and he was prescribed medication and a brace (Stokes aff., ¶ 7 and 8). Based upon the foregoing, summary judgment for the defendants is appropriate on this claim.

***Co-Payments for Medical Care***

"Prisons and jails are allowed to impose co-payments for medical services *if they actually provide medical care to the prisoner*." *See Cabbagestalk v. Richstad*, Civil Action No. 3:09-1834-SB, 2009 WL 4040479, at *9 (D.S.C. Nov. 9, 2009) (emphasis in original). *See also Sturkey v. Ozmint*, Civil Action No. 8:07-1502-MBS, 2009 WL 649569, at * 2 (D.S.C. Mar. 11, 2009) ("[D]ebits such as those made for filing fees, medical services, and expenses are not 'deprivations' because the inmate has been provided with a service or good in exchange for the money debited."); and *Sims v. Lexington Cnty. Det. Ctr.*, Civil Action No. 3:06-3490-PMD, 2008 WL 216345, at * 7 (D.S.C. Jan. 24, 2008) ("Although Plaintiff complains of having to pay a fee for medical services, he has not shown that he was denied treatment for any inability to pay. Furthermore, jails are allowed to impose co-payments for medical services.").

Here, the evidence before the court demonstrates that the plaintiff was provided medical care, and thus the SCDC was allowed to charge the plaintiff co-payments for these medical services. Accordingly, summary judgment is appropriate on this claim.

***Sickle Cell Anemia and Asthma***

In his response in opposition to summary judgment, the plaintiff raises matters concerning his medical care for sickle cell anemia and asthma. These matters were not raised in the original complaint or amended complaint, and therefore, they should not be considered by this court. *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

***Access to Courts***

The plaintiff alleges that defendants Padula, Brooks, Peele, Whitney, and Bracey-Simon hindered the filing of a petition for writ of certiorari from the decision of the United States Court of Appeals for the Fourth Circuit in *Ham v. Chandler*, No. 10-7614, 415

F. App'x 490 (4th Cir. Mar. 9, 2011). In *Ham v. Chandler*, the Court of Appeals affirmed the judgment of this court in *Angelo Ham v. Nora Chandler and Larry W. Propes*, Civil Action No. 6:10-2020-DCN-KFM, 2010 WL 4638156 (D.S.C. Nov. 8, 2010), *adopting* the undersigned's Report and Recommendation reported at 2010 WL 4638757 (D.S.C. Aug. 12, 2010) (recommending summary dismissal).

To state a claim for denial of access to the courts, a plaintiff must establish that he suffered an "actual injury or specific harm." *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (holding that prisoner must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded); *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989); and *Carter v. Hutto*, 781 F.2d 1028, 1031–32 (4th Cir. 1986) (alleging that some of the legal documents destroyed were irreplaceable).

The plaintiff fails to satisfy the *Lewis v. Casey* requirement that the prisoner be asserting a non-frivolous habeas or civil rights claim. The plaintiff's underlying civil rights action, Civil Action No. 6:10-2020-DCN-KFM, was subject to summary dismissal because negligence was not actionable under Section 1983 and because Clerk of Court Propes and Deputy Clerk Chandler had sovereign immunity and quasi-judicial (derivative) immunity. 2010 WL 4638757 at *3–4. Hence, it came as no surprise that the Court of Appeals affirmed the judgment of this court for the reasons stated by this court.

Although defendant Bracey-Simon (who is referred to as "Simon" in the exhibits) clearly made a mistake with respect to the mailing of the petition for writ of certiorari as an original action in the initial response (dated April 5, 2011) to the plaintiff's grievance (No. Lee CI-0676-11), she apprised the plaintiff that he could still use one of his indigent envelopes to mail the petition for writ of certiorari to the Supreme Court of the United States (doc. 68-3). Defendant Bracey-Simon's mistake was that she did not realize that the plaintiff was seeking to appeal a decision of the United States Court of Appeals for

the Fourth Circuit. The plaintiff's petition for writ of certiorari was mailed on June 28, 2011, after the SCDC grievance coordinator acknowledged the mistake of defendant Bracey-Simon:

> Your concern has been reviewed. Ms. Simon admitted that she made an error and informed you to return the mail to be posted. You were allowed to send out mail on June 28, 2011. It is noted that there may be times when the mail room staff is not clear on the courts you are attempting to file with; however, once you provide all the necessary information legal material is mailed.
>
> Therefore, your grievance is resolved.

(Doc. 68-at 4). *See also* Step 1 response for Grievance No. 1258-11 (doc. 68-3 at 7).

While Bracey-Simon made a mistake, it was not intentional and could best be characterized as negligence, which is not actionable under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 (1986); and *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986).

Moreover, Bracey-Simon's error is not attributable to the other defendants. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); and *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977). In fact, the Supreme Court has held that the term "supervisory liability" in the context of a Section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). Even if prior Fourth Circuit case law on supervisory liability is still good law after *Iqbal*, *see Battle v. Ozmint*, Civil Action No. 2:12-1350-CMC-BHH, 2013 WL 4522517, at *9 (D.S.C. Aug. 27, 2013) (noting question as to whether supervisory liability can even still be imposed

9

after *Iqbal*), the plaintiff has not satisfied the requirements for imposing supervisory liability enunciated in cases such as *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); and *Slakan v. Porter*, 737 F.2d 368, 370–75 (4th Cir. 1984).

Even aside from Bracey-Simon's error, the plaintiff's access to court claim fails because the plaintiff, in *Ham v. Chandler*, was attempting to continue to advance frivolous claims against two defendants who were immune from suit. *See Collins v. Padula*, Civil Action No. No. 2:12-3112-DCN-BHH, 2014 WL 1319103, at *10 (D.S.C. Feb. 11, 2014) ("Furthermore, Plaintiff fails to establish actual prejudice because Plaintiff's appeal was frivolous.").

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the record indicates that the plaintiff's simple dyspepsia, although chronic, is not a serious medical condition. Hence, the defendants involved in the plaintiff's medical care have not been deliberately indifferent to the plaintiff's serious medical needs, as required by *Rish v. Johnson*, 131 F.3d at 1096. Moreover, the defendants allegedly involved with the plaintiff's attempt to mail a frivolous petition for writ of certiorari have not violated clearly established law because the holding in *Lewis v. Casey* does not encompass frivolous pleadings. As a result, there has been no deprivation of a constitutional right in the above-captioned case. Therefore, the undersigned finds that all defendants are entitled to qualified immunity. *See Carroll v. Carman*, 135 S.Ct. 348, 349–52 (2014) (*per curiam*); and *Tolan v. Cotton*, 134 S.Ct. at 1865.

Based upon the foregoing, the defendants' motion for summary judgment should be granted.

***Judgment on the Pleadings***

The plaintiff filed a "motion for a judgment on the pleadings" on March 6, 2014, and the defendants filed their response in opposition on March 20, 2014. The standard of review for a Federal Rule of Civil Procedure 12(c) motion is the same as that under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir.2012). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Id.* at 752. As argued by the defendants, the issues litigated here do not lend themselves to disposition by simple consideration of the pleadings alone. Accordingly, the plaintiff's motion for judgment on the pleadings should be denied. To the extent the plaintiff's motion is construed as a motion for summary judgment, the evidence before the court, as discussed above, demonstrates that there is

11

no genuine dispute as to any material fact and the defendants are entitled to judgment as a matter of law.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the District Court grant the defendants' motion for summary judgment (doc. 46) and deny the plaintiff's motion for judgment on the pleadings (doc. 36).  The attention of the parties is directed to the notice on the next page.

                                                s/Kevin F. McDonald
                                                United States Magistrate Judge

January 12, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).